UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal. No.   15cr10153 |
| ) | |
| v. ) | |
| ) | **Count One:** Conspiracy to Provide Material |
| ) | Support to Designated Foreign Terrorist |
| (1) David Daoud Wright, ) | Organization - 18 U.S.C. § 2339B(a)(1) |
| a/k/a Dawud Sharif Wright, ) | and Aiding and Abetting - 18 U.S.C. § 2 |
| a/k/a Dawud Sharif Abdul Wright, ) | (**Wright and Rovinski);** |
| a/k/a Dawud Sharif Abdul Khaliq, and ) | |
| ) | **Count Two:** Conspiracy to Obstruct Justice – |
| (2) Nicholas Alexander Rovinski, ) | 18 U.S.C. § 371 (**Wright**); and |
| a/k/a Nuh Amriki, ) | |
| a/k/a Nuh Andalusi, ) | **Count Three:** Obstruction of Justice – 18 U.S.C. |
| ) | 18 U.S.C. § 1519 and Aiding and Abetting – |
| Defendants. ) | U.S.C. § 2 (**Wright).** |

## INDICTMENT

The Grand Jury charges:

### INTRODUCTORY ALLEGATIONS

1.      David Daoud Wright a/k/a Dawud Sharif Wright a/k/a Dawud Sharif Abdul Wright

a/k/a Dawud Sharif Abdul Khaliq ("WRIGHT") is a United States citizen who at all pertinent

times lived in Everett, Massachusetts.   WRIGHT's uncle, Usaamah Abdullah Rahim ("Rahim"),

resided in Roslindale, Massachusetts until his death at approximately 7:00 a.m. on June 2, 2015.

Nicholas Rovinski a/k/a Nuh Amriki a/k/a Nuh al Andalusi ("ROVINSKI") is a United States

citizen who at all pertinent times lived in Warwick, Rhode Island.

2.      In or about June 2014, WRIGHT began discussing with Rahim his support of the

Islamic State of Iraq and the Levant ("ISIL") and the need to commit acts of violence in support of

ISIL.   Additionally, in or about June 2014, WRIGHT met ROVINSKI online and began

communicating with him.   WRIGHT, ROVINSKI, and Rahim shared a common goal to support

ISIL.

3.    On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.   On May 15, 2014, the United States Secretary of State formally amended the existing designation of al-Qa'ida in Iraq as a Foreign Terrorist Organization to add the alias Islamic State of Iraq and the Levant as its primary name.   The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham (ISIS), the Islamic State of Iraq and Syria (ISIS), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production (all collectively referred to herein as "ISIL").

4.    The State Department has reported that, among other things, ISIL has committed systematic abuses of human rights and violations of international law, including indiscriminate killing and deliberate targeting of civilians, mass executions and extrajudicial killings, persecution of individuals and communities on the basis of their identity, kidnapping of civilians, forced displacement of Shia communities and minority groups, killing and maiming of children, rape, and other forms of sexual violence. According to the State Department, ISIL has recruited thousands of foreign fighters to Iraq and Syria from across the globe and has used technology to spread its violent extremist ideology and to incite others to commit terrorist acts.

5.    Beginning in 2014, using social media, ISIL has called for attacks against citizens—civilian and military—of the countries participating in the United States-led coalition against ISIL.   For instance, on September 21, 2014, ISIL released a speech of Abu Muhammed

2

Al-Adnani, a senior leader and official spokesman of ISIL. In this speech, entitled, "Indeed Your Lord is Ever Watchful," Al-Adnani calls on Muslims who support ISIL from around the world to "defend the Islamic State" and to "rise and defend your state from your place where you may be." Additionally, over the last year, ISIL has been distributing beheading videos to demonstrate, among other things, an acceptable method of killing people who are believed to be non-believers, or infidels. More recently, using social media, ISIL has been encouraging individuals to kill specific persons or groups of persons such as members of the military and law enforcement within the United States.

6.     Beginning at a date unknown but no later than May 2015, WRIGHT, ROVINSKI, and Rahim agreed to a plan to commit attacks and kill persons inside the United States, which they believed would support ISIL's objectives. The attack plan included the beheading of at least one person (Intended Victim-1), a New York woman, whom ISIL had identified for murder through a "fatwah," or religious decree, to ISIL supporters.

7.     Between on or about May 25, 2015, and May 27, 2015, Rahim purchased three knives ranging in length from 13 to 15 inches on Amazon.com, the last of which were delivered to Rahim on May 30, 2015. On May 31, 2015, WRIGHT, ROVINSKI, and Rahim met for more than two hours on a secluded beach in Rhode Island. During that meeting, the three men discussed a plan to behead Intended Victim-1.

8.     WRIGHT, ROVINSKI, and Rahim all understood that law enforcement was investigating persons in the United States that supported ISIL and that their actions in support of ISIL would similarly be investigated by law enforcement. Accordingly, they agreed not to share information about their plans with anyone who had not pledged allegiance, or given "bayah," to

3

ISIL.

9.      On the morning of June 2, 2015, Rahim informed WRIGHT that he intended to "go after" the "boys in blue," a slang term used to describe police officers, in Massachusetts on that day or the next day.   WRIGHT encouraged and supported Rahim's intended action.

10.     WRIGHT, knowing that law enforcement would be conducting an investigation of Rahim's actions, instructed Rahim to "completely" destroy his smartphone and "completely wipe out everything" from his laptop computer.   Rahim followed WRIGHT's instructions and initiated the process of restoring his computer to the original factory operating system so as to delete or wipe all the data it contained.

11.     Less than two hours after WRIGHT encouraged Rahim to attack police officers in Massachusetts, Rahim was in a public parking lot in Roslindale, when he was approached by Boston Police Officers and FBI Special Agents.   Rahim took out one of the three knives he had purchased from Amazon.com when he saw the officers and agents.   The officers and agents told Rahim to drop his weapon and Rahim responded, "you drop yours."   Rahim then moved towards the officers and agents while brandishing his weapon, and he was shot by law enforcement.

12.     The Federal Bureau of Investigation's ("FBI's") Joint Terrorism Task Force ("JTTF") led the investigation into Rahim's actions and the ISIL-motivated attack plans of Rahim, WRIGHT, and ROVINSKI.   As part of that investigation, on June 3, 2015, FBI's JTTF executed a search warrant at Rahim's residence.   In Rahim's bedroom, they found a running laptop computer, which was being restored to its original "factory settings" and deleting its contents. The agents also found a handwritten will signed by Rahim on a desk in the living room area.

4

**COUNT ONE:**     **(18 U.S.C. § 2339B(a)(1) – Conspiracy to Provide Material Support
to a Designated Foreign Terrorist Organization); and
(18 U.S.C. § 2 – Aiding and Abetting)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-12 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

From a date unknown but no later than in or about May 2015 and continuing until on or

about June 2, 2015, in the District of Massachusetts and elsewhere,

### (1) DAVID DAOUD WRIGHT,
### a/k/a DAWUD SHARIF WRIGHT,
### a/k/a DAWUD SHARIF ABDUL WRIGHT,
### a/k/a DAWUD SHARIF ABDUL KHALIQ, and

### (2) NICHOLAS ALEXANDER ROVINSKI,
### a/k/a NUH AMRIKI, a/k/a NUH ANDALUSI,

defendants herein, did knowingly conspire and agree with each other, with Usaamah Abdullah

Rahim, and with others unknown to the grand jury, to provide material support and resources, as

that term is defined in Title 18, United States Code, Section 2339A(b), to wit, services and

personnel, including themselves, to a foreign terrorist organization, namely, the Islamic State in

Iraq and the Levant, which the Secretary of State has designated as a foreign terrorist organization,

knowing that the organization was a designated foreign terrorist organization, and that the

organization had engaged in and was engaging in terrorist activity and terrorism.

All in violation of 18 U.S.C. §§ 2339B(a)(1) and 2.

5

**COUNT TWO:**            **(18 U.S.C. § 371 - Conspiracy to Obstruct Justice)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-12 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

On or about June 2, 2015, in the District of Massachusetts,

## (1) DAVID DAOUD WRIGHT,
### a/k/a DAWUD SHARIF WRIGHT,
### a/k/a DAWUD SHARIF ABDUL WRIGHT,
### a/k/a DAWUD SHARIF ABDUL KHALIQ,

defendant herein, did knowingly conspire, combine, confederate and agree with Usaamah

Abdullah Rahim to commit an offense against the United States, to wit, Obstruction of Justice, in

violation of 18 U.S.C. § 1519, by agreeing to knowingly alter, destroy, mutilate, conceal, and

cover up tangible objects belonging to Rahim, namely a smartphone and laptop computer, with the

intent to impede, obstruct, and influence an investigation and proper administration of a matter

within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States

Government, and in relation to and contemplation of such investigation and matter.

## OVERT ACTS

In furtherance of the conspiracy, and to effect its objects, the defendant and his

co-conspirator committed overt acts, including, but not limited to, the following:

a.      On the morning of June 2, 2015, after Rahim informed WRIGHT that he intended

to "go after" the "boys in blue," WRIGHT instructed Rahim to "completely destroy" his

smartphone.

b.      On the morning of June 2, 2015, WRIGHT also told Rahim to delete and

"completely wipe out everything" from his laptop computer by restoring the operating system to

6

the original "factory setting."

     c.     As instructed, before leaving his residence on June 2, 2015 and encountering law enforcement, Rahim took steps to restore his laptop computer to the original factory operating system so as to delete the contents of his computer.

     All in violation of 18 U.S.C. § 371.

**COUNT THREE:** **(18 U.S.C. § 1519 – Obstruction of Justice); and
(18 U.S.C. § 2 – Aiding and Abetting)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-12 are hereby re-alleged and incorporated by

reference as if fully set forth herein.

On or about June 2, 2015, in the District of Massachusetts,

## (1) DAVID DAOUD WRIGHT,
### a/k/a DAWUD SHARIF WRIGHT,
### a/k/a DAWUD SHARIF ABDUL WRIGHT,
### a/k/a DAWUD SHARIF ABDUL KHALIQ,

defendant herein, did knowingly cause Usaamah Abdullah Rahim to alter, destroy, mutilate,

conceal, and cover up a tangible object, namely a laptop computer, with the intent to impede,

obstruct, and influence an investigation and proper administration of a matter within the

jurisdiction of the Federal Bureau of Investigation, an agency of the United States Government,

and in relation to and contemplation of such investigation and matter.

All in violation of 18 U.S.C. §§ 1519 and 2.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

B. STEPHANIE SIEGMANN
NADINE PELLEGRINI
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS, Boston, MA                June 18, 2015

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk

12:10

6-18-15

9