IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS ROVINSKI | No. 15-CR-10153-WGY |

**SENTENCING MEMORANDUM OF NICHOLAS ROVINSKI**

Defendant, Nicholas Rovinski, respectfully submits this memorandum and appended exhibits,[1] together with the psychiatric evaluation previously filed under seal, to assist the Court with sentencing.

In accord with the government's recommendation, the defense submits that a sentence of 15 years, the minimum under the Rule 11(c)(1)(C) plea agreement, is sufficient to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a).

The Court heard extensive evidence during the trial of Mr. Wright and also had the opportunity to review voluminous documentation about the offense, Mr. Rovinski, and co-conspirators. Mr. Rovinski will not repeat or summarize all of that information here.

Mr. Rovinski was born in 1990 with cerebral palsy, a neurological disorder caused by a non-progressive brain injury or malformation that occurs while the child's brain is under development (typically pre-natal or shortly after birth). Mr. Rovinski received extensive services and treatment in childhood from the Shriners Hospitals' cerebral palsy program. Today as a young adult, a lay person might describe Mr. Rovinski's current symptoms as "mild" in that,

---

[1] Exhibit A is the Declaration of Jack Donson, a retired BOP Correctional Treatment Specialist who now works as a private consultant. Exhibit B consists of compiled letters of support from Mr. Rovinski's family and family associates.

other than some difficulties in his gait and, sometimes, peculiar affect and literal-mindedness in personal interactions, Mr. Rovinski can speak and function normally. However, as described in the psychiatric evaluation, Mr. Rovinski's limitations are actually much more profound.

Mr. Rovinski was treated badly by other children in school in connection with his condition and thus entered his adolescent years in social isolation and without direction. While Mr. Rovinski came from what one might describe as an ordinary American "working class" background and grew up in a nominally Christian household, he became interested in Islam in the months prior to commencement of the offense and quickly fell under the influence of Wright after the two met online, and later, in person. He became a proponent, at least in his own mind, of violent and radical ideology.

Upon his arrest, he was held in isolation at Essex County Correctional facility where he was treated extremely badly by both correctional staff and other inmates given the notoriety of his arrest. He became increasingly angry and depressed. An older and more experienced inmate in a neighboring cell, facing his own serious federal charges and angling for cooperation credit, encouraged Mr. Rovinski's expressions of anger and suggested that he could help Mr. Rovinski to communicate with Wright and execute a preposterous plan to overwhelm law enforcement by flooding the East Coast with opiates imported from the Middle East. The other inmate then reported Mr. Rovinski and a superseding indictment followed. This was the "low point" of Mr. Rovinski's journey.

However, he remained in contact with his family, particularly his mother, and slowly came to the realization, as if awakening from a dream, that pursuit of religious goals by means of violence is wrong. He was transferred to MCI Cedar junction, where his conditions of confinement and treatment by staff and other inmates have been far more humane and

professional.  He gave up his interest Islam entirely, returning first to learn more about his Catholic roots and, now, continuing to read widely and ponder what spiritual tradition he finds most meaningful and welcoming.

Mr. Rovinski is unequivocally guilty of the conspiracy offenses charged.  He was a uniquely vulnerable young man.  For a time, he adopted an odious, violent extremist ideology.  He expressed readiness to sign on to plans of his co-conspirators[2] and suggested fantastical schemes of his own.  Fortunately, however, he never came close to participating in any actual act of violence, and as the medical and psychiatric information demonstrates, he was uniquely ill-equipped ever to do so.  Moreover, he came to his senses and has done everything he could to make things right, earning the respect and empathy of government agents in the process.  In the circumstances, 15 years is an extraordinarily severe punishment, surely sufficient to accomplish the goals of sentencing, a strong deterrent but also a signal that here is hope and promise in redemption, repentance, and change.

Finally, as set forth in the Donson Declaration, Mr. Rovinski will face particular dangers and challenges while serving a long BOP sentence.  Accordingly, the defense requests that the Court include the following judicial recommendation in the Judgment:

> The Court strongly recommends that the defendant be initially designated to FCI Danbury and that he participate in the Bureau of Prisons' SKILLS program.  The Court recommends that his Security Level not be increased outside the parameters of the BOP security classification system.  If the BOP does not comply with this recommendation, the Court requests a letter detailing the specific reason(s) for not complying.

---

[2] However, the government does not claim, and the evidence does not show, that Mr. Rovinski had any knowledge of communications with Junaid Hussain or the late-breaking plan of Mr. Rahim to "go after boys in blue."

## Conclusion

For the foregoing reasons, the Court should impose the jointly recommended sentence of 15 years.

Respectfully submitted,

NICHOLAS ROVINSKI
by his attorney

/s/  William Fick
WILLIAM W. FICK, ESQ. (BBO # 650562)
FICK & MARX LLP
100 Franklin Street, 7th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 19, 2017.

/s/ William Fick
