```
                 UNITED STATES DISTRICT COURT

                  DISTRICT OF MASSACHUSETTS

                             No. 1:15-cr-10153-WGY



UNITED STATES OF AMERICA


vs.


NICHOLAS A. ROVINSKI



                      *********

               For Hearing Before:
              Judge William G. Young


                     Sentencing


               United States District Court
               District of Massachusetts (Boston)
               One Courthouse Way
               Boston, Massachusetts 02210
               Wednesday, December 20, 2017


                      *******


          REPORTER: RICHARD H. ROMANOW, RPR
                Official Court Reporter
               United States District Court
     One Courthouse Way, Room 5510, Boston, MA 02210
                bulldog@richromanow.com
```

```
 1                    A P P E A R A N C E S

 2

 3    B. STEPHANIE SIEGMANN, ESQ.
         United States Attorney's Office
 4       J. Joseph Moakley U.S. Courthouse
         1 Courthouse Way, Suite 9200
 5       Boston, Massachusetts 02210
         (617) 748-3191
 6       Email: Stephanie.siegmann@usdoj.gov
      and
 7    GREGORY R. GONZALEZ, ESQ.
         U.S. Department of Justice
 8       950 Pennsylvania Ave., NW
         Washington, DC 20530
 9       (202) 513-4050
         Email: Gregory.gonzalez2@usdoj.gov
10       For the United States

11

12    WILLIAM W. FICK, ESQ., ESQ.
         Fick & Marx, LLP
13       100 Franklin Street, 7th Floor
         Boston, Massachusetts 02110
14       (857) 321-8360
         Email: Wfick@fickmarx.com
15       For the defendant

16

17

18

19

20

21

22

23

24

25
```

```
 1                P R O C E E D I N G S
 2                (Begins, 10:00 a.m.)
 3                THE CLERK:  Criminal Matter 15-10153, the
 4   United States of America versus Nicholas Alexander
 5   Rovinski.
 6                THE COURT:  Good morning, would counsel
 7   identify themselves.
 8                MS. SIEGMANN:  Good morning, your Honor,
 9   Stephanie Siegmann for the United States, and with me at
10   counsel table is Gregory Gonzalez from the National
11   Security Division at the Department of Justice.
12                THE COURT:  Thank you.
13                MR. FICK:  And good morning, your Honor,
14   William Fick for Mr. Rovinski, who is here next to me.
15                THE COURT:  Yes.  Good morning.
16         May I talk directly to Mr. Rovinski?
17                MR. FICK:  Yes, your Honor.
18                THE COURT:  Mr. Rovinski, have you read the
19   presentence report that's been prepared in your case?
20                THE DEFENDANT:  Yes, I have, your Honor.
21                THE COURT:  Have you talked it all over with
22   Mr. Fick?
23                THE DEFENDANT:  Yes.
24                THE COURT:  Do you believe you understand it?
25                THE DEFONDANT:  I believe I do.
```

1      THE COURT:  Nothing's been withheld from the
2 presentence report under the rules of criminal
3 procedure?
4      PROBATION OFFICER:  No, your Honor.
5      THE COURT:  Please be seated.
6      (Defendant is seated.)
7      THE COURT:  This matter comes before the Court
8 on a C-plea.  I think it's appropriate to start by
9 saying I've carefully reviewed all the materials that
10 are before the Court and I -- so I have before me his
11 tender of a plea of guilty pursuant to that C-plea
12 agreement, and now I accept that tender.  So that
13 restricts the Court's, um, the range.  I should go
14 further and say, having read the government's sentencing
15 memorandum, um, I am inclined -- and I think that's a
16 sensitive and careful recommendation, to accept that
17 recommendation, and that is not different than the best
18 the defendant can do.  But I'll hear argument if some is
19 necessary.
20      It is still my obligation accurately to calculate
21 the sentencing guidelines.  And so, Ms. Siegmann, let me
22 pose this question to you.
23      Yesterday you argued an issue in the guideline
24 calculation which, um, raised with the Court its
25 responsibility independently to analyze the guidelines.

1  As I recall the argument, the government agreed that the
2  guidelines arithmetically were properly calculated, but
3  -- and you argued frankly they were wrong and a careful
4  review of the charge and conviction should lead the
5  Court to that conclusion.  I took the matter under
6  advisement.  And as it turned out, it was moot.  That's
7  my view.
8          Have I got that right?
9          MS. SIEGMANN:  Well, I think the government
10 had -- the calculation was one level higher than what
11 probation had.
12         THE COURT:  True.
13         MS. SIEGMANN:  So arithmetically it was
14 different, because I was at level 43 and the probation
15 department is at 42.
16         THE COURT:  Well, yes, but I guess I'm -- is
17 that issue present here?
18         MS. SIEGMANN:  No, because the plea agreement
19 has the correct guideline calculation, in the
20 government's view, and it uses a different guideline
21 section than Mr. Wright's, and that's because the
22 parties and probation basically followed the plea
23 agreement in the calculations.  And so that's why there
24 is no issue here as there was in Mr. Wright's sentence.
25         THE COURT:  Thank you.  And so if I put it to

```
 1   you, you then agree with the guideline calculation as
 2   set forth in the presentence report?
 3             MS. SIEGMANN:  For Mr. Rovinski.
 4             THE COURT:  For Mr. Rovinski?
 5             MS. SIEGMANN:  Yes, I do.
 6             THE COURT:  And, Mr. Fick, you agree with the
 7   guideline calculation?
 8             MR. FICK:  Yes.
 9             THE COURT:  All right, because that needs to
10   be established.
11        I think -- it's pure dicta because I don't think
12   it, um -- well, it did not bear indeed -- it bore but
13   was of no moment in the sentencing of Mr. Wright, but on
14   reflection I think the government has the better of the
15   argument, and I'll say that on the record.
16        All right, I've talked enough.  I've accepted the
17   C-plea.  I've indicated my willingness to accept what in
18   effect is the joint recommendation.
19        Oh, I do have one other question and that is
20   Mr. Fick has, on Mr. Rovinski's behalf, made a strong
21   argument for a designation recommendation from this
22   court.
23        Do you object to that?
24             MS. SIEGMANN:  No, your Honor.  And actually,
25   um, one of the points I was going to make today is that
```

1     the government jointly requests that BOP designation.
2            THE COURT:  Thank you.  Those are my
3     questions.  And I think I should give the government,
4     the defense, and Mr. Rovinski a chance to speak, if you
5     wish.  I'm inclined to accept the joint recommendation
6     and the designation as well, um, so I think it can be
7     brief, but I think you're entitled to be heard.  We'll
8     start with the government.
9            MS. SIEGMANN:  Your Honor, as the government
10    set forth in its sentencing memorandum, while the crimes
11    here are very serious, we believe the Section 3553(a)
12    factors, especially the mitigating factors, support a
13    sentence of 15 years, 10 years for Count 4 and 5 years
14    for Count 1 to run consecutively.  The government also
15    urges that the Court impose a term of lifetime
16    supervised release upon his -- the defendant's release
17    from prison.
18       I just want, just for the record, to address some
19    of the factors in this decision and recommendation, let
20    me just briefly discuss a few of them for the Court.
21       There was no doubt that the defendant and his
22    conspirators posed a grave threat to the United States
23    in June 2015.  He was a strong supporter of ISIS, he had
24    twice pledged support for Abu Bakr Al Baghdadi, he made
25    numerous anti U.S. statements and they were in

```
 1    conspiring to kill a U.S. citizen and in plotting other
 2    violent attacks, but -- and he continued to engage in
 3    some activity in prison, but the mitigating factors here
 4    differentiates this defendant from many other defendants
 5    the government has seen and is aware of.
 6         Mr. Rovinski has renounced publicly his support
 7    for ISIS, he has recognized that he himself deserves to
 8    be punished for his conduct, he understands the
 9    wrongfulness of his behaviors, and he cooperated fully
10    with the government and testified for three days at
11    trial, the government thinks that testimony was critical
12    to the jury's convictions, and it's clear that he was a
13    mere follower compared to Wright, and that Mr. Wright,
14    the defendant you sentenced yesterday, was the
15    mastermind and manipulated Mr. Rovinski as he did his
16    Uncle Rahim.
17         The other issues I think that weigh in favor of
18    the 15-year sentence is the fact that, by virtue of
19    testifying and cooperating against an ISIS plotter,
20    Mr. Rovinski has exposed himself to retribution by ISIS.
21    ISIS is still operating even though they've lost
22    territory graphically, they have a robust, robust
23    presence on the internet and social media and they
24    continue to recruit people to kill people in the United
25    States and in the west.
```

1      Additionally I think that the factors also, um,
2  from the government's point of view, that also are
3  important to note, is that Mr. Rovinski never ever
4  complained despite all the many preparation sessions we
5  had with him, he was completely forthcoming and
6  cooperative, and even when he was told about threats
7  against his life and those of his family members, and
8  even the fact that Mr. Wright wanted to behead his cat,
9  he never expressed any reluctance to testify.
10      Lastly, the government believes that his physical
11  condition, um, of cerebral palsy and cognitive deficits,
12  although not an excuse for the crimes, may have been one
13  of the reasons why he was so swayed by the appeals of
14  ISIS, you know, fame and glory in the afterlife, because
15  of the troubles he's had over his lifetime.  And so for
16  those reasons the government believes -- and likely he
17  was deceived by it, many of the representations, because
18  of those, um, his physical and, um, mental deficits.
19      For those reasons the government is requesting a
20  sentence of 15 years, and again I jointly request the
21  BOP designation language that's contained at Page 3 of
22  the defendant's memorandum.  Thank you, your Honor.
23           THE COURT:  Thank you.  Mr. Fick.
24           MR. FICK:  Thank you, your Honor.  I'll be
25  brief and not belabor what's in the papers.

```
 1              You know I'd make the observation that the
 2    government and law enforcement face a very vexing
 3    problem today about what to do about online
 4    radicalization, young people looking for a cause, and
 5    what happens when they lash onto an odious and dangerous
 6    and violent cause, and, you know, one can certainly
 7    understand, stepping back, that it's very difficult for
 8    the government and law enforcement to know both who
 9    might go operational, who might stay within the realm of
10    ideas.  You know we'd like to think in this situation,
11    given Mr. Rovinski's unique background and
12    circumstances, that, you know, if he hadn't had the
13    misfortune of encountering Mr. Wright online, this idea,
14    this phase, might well have passed unnoticed much like
15    the -- the notion of joining the teepee community in
16    Suskatchewan, like Dr. Reid talked about in the
17    psychiatric evaluation.  But unfortunately that's not
18    what happened, the federal crime of conspiracy is
19    serious, the elements here are met, Mr. Rovinski is
20    guilty and pled guilty to that crime, which still
21    however leaves us with the question of "Well, what do
22    you do in a situation like this?"  And I think it's
23    important to recognize that 15 years is a very very
24    substantial punishment.  We get inured to huge numbers
25    in this building sometimes, but 15 years, on any
```

1  measure, is a very substantial punishment, particularly
2  for someone coming from where Mr. Rovinski is.  You know
3  the, um -- but certainly I think it's amply sufficient
4  in the circumstances.
5       And I think one of the best measures of that, and
6  the most interesting ones, and the one that I'm sort of
7  the most appreciative of is the measure of -- that the
8  government and law enforcement itself eventually came
9  to.  You know we entered the plea agreement originally
10  in the situation where even notwithstanding the
11  cooperation the government took the position that it was
12  going to ask for 22 years, although the defense would be
13  allowed to ask for 15.  What I think happened as time
14  unfolded and as Mr. Rovinski had the opportunity to
15  spend hour after hour after hour both with the
16  prosecutors and with law enforcement agents is, um, the
17  agents, I think in particular, came to have a very -- a
18  much more nuanced view of what Mr. Rovinski is, what
19  challenges he faced, where he is now, and what hope he
20  offers in the future, and I really -- it's a peculiar
21  position for someone like me to be in, for a defense
22  lawyer to be in, but I really appreciate the sort of
23  openmindedness, honesty, and integrity that law
24  enforcement showed for Mr. Rovinski in this case, and I
25  think the government's decision to jointly recommend 15

years under the C-plea is a reflection of that, and I think it clearly indicates that that is a sufficient punishment.  You know they are the people here who really came to best know what Mr. Rovinski went through and where he's wound up today.

    The other group of people of course that I look to in trying to assess, um, you know, what arguments I can make and how to look at this situation are his family, his mother, his father, his brother, the people that have known him since he was born, and, you know, I will say to them and to the Court, um, that I think I will probably go to my grave thinking that perhaps I have failed them in some way because from their point of view of course 15 is an unthinkable tragedy, they could never imagine that their son, their brother, would wind up in this situation.  On the other hand I recognize the challenge that law enforcement faces, these are very serious crimes, these are very dangerous ideas, and so some measure of punishment is necessary here and, um, this is the number we landed on in the circumstances.  I appreciate the Court's inclination to adopt it and I support that.  And once again I simply thank the government and law enforcement for its, um, recognition that that is sufficient in the circumstances.

    THE COURT:  Thank you.

```
 1          Mr. Rovinski, you have the right to talk to me
 2   directly.  You are not required to.  If you want to, if
 3   you want to say anything, you may do so now.
 4          THE DEFENDANT:  Yes, your Honor, I would like
 5   to.  I've prepared a speech for you.
 6          (Takes out paper.)
 7          THE DEFENDANT:  While being incarcerated I've
 8   had ample time to meditate on my circumstances, seeing
 9   what I was planning as being met with malice, animus,
10   and evil.  Since coming to such realization, I'm
11   starting to be a new man, I've come to accept
12   responsibility for my actions that brought me here
13   today.
14         Standing here before you, while it's unfortunate
15   but necessary to me and my development as a human being,
16   but utterly condemning the violent acts with which I am
17   charged, I shall move forward.  As for my future, I hope
18   to contribute to my country in a meaningful way through
19   career and charity.  I was planning to pursue a career
20   in diesel mechanics, hydraulics, possibly Merchant
21   Marine, and in doing so I will work diligently to
22   participate as a productive citizen and member of
23   society.
24         Pertaining to charity, I wish to volunteer for
25   programs towards helping the destitute.  I wish to
```

```
 1   volunteer my time for veterans who have fought for the
 2   security and freedom of this country.  I want to thank
 3   God for giving me a second chance and to thank the
 4   prosecuting agents for taking their time to talk with me
 5   and to work with me towards my sentencing.  Thank you.
 6           THE COURT:  Thank you.
 7           (Pause.)
 8           THE COURT:  Mr. Nicholas Rovinski, pursuant to
 9   18 United States Code, Section 3553A, the information
10   from the United States Attorney, your attorney, the
11   probation department, and, um, yourself, this Court
12   sentences you to 15 years in the custody of the United
13   States Attorney General.  The Court breaks down that
14   sentence as follows:  On Count 1, I sentence you to 7
15   years.  On Count 4, I sentence you to 8 years from and
16   after the sentence on Count 1.  I, um -- the proposal by
17   the government makes perfect sense but since I stumbled
18   in sentencing Mr. Wright, it seems to me to make sense
19   to certainly not sentence Mr. Rovinski, as a matter of
20   form, to more than I sentenced Mr. Wright on Count 4.
21   I'm fully cognizant now that the sentence has to run
22   from and after.  So it's a total of 15 years.
23      The $200 special assessment required by law.  The
24   -- a lifetime of supervised release, as agreed by the
25   parties, the Court imposes it, with all the general
```

```
 1    conditions of supervised release and the following
 2    special conditions.
 3          When you are released from prison, you're to
 4    reside for a period of up to 6 months in a residential
 5    reentry center or until such time as a suitable
 6    residence can be located.  You must observe the rules of
 7    that facility.  You must not knowingly have any contact,
 8    direct or indirect, with Pamela Geller.  You're
 9    prohibited from drinking alcohol to the point of
10    intoxication, as defined by Massachusetts state law as a
11    .10 blood alcohol level.  You must participate in a
12    program for substance abuse counseling, which program
13    may include drug testing not to exceed 104 drug tests
14    per year.  You must participate in a mental health
15    treatment program as directed by the probation office.
16    You must participate in a vocational services training
17    program as directed by the probation office.  You're
18    required to contribute to the costs of these special
19    conditions to the extent of your ability so to
20    contribute.  They'll be no fine due to your inability to
21    pay a fine.
22          The Court adopts the recommendation and now makes
23    the recommendation which both parties jointly propose.
24    The Court strongly recommends that Mr. Rovinski
25    initially be designated to FCI Danbury and that he
```

participate in the Bureau of Prisons' Skills Program. The Court recommends that his security level not be increased outside the parameters of the Bureau of Prisons' security classification system. If the Bureau of Prisons does not comply with this recommendation, the Court requests a letter detailing the specific reasons for not so complying.

Let me explain this sentence to you, Mr. Rovinski, though both sides in effect agree and you evidence a real understanding of why this sentence is necessary. These are most serious crimes. I listened very carefully to what you said. I'm glad you can acknowledge how fair the government has been here. And in his skill as your attorney, I accept and I think Mr. Fick accurately compliments the government in its sensitivity toward your position and your specific circumstances, and I truly respect that.

I tried to say yesterday -- I'm not going to extend this. I tried to say yesterday, and I did so inartfully, what you, Mr. Fick, have managed to say more succinctly and more accurately, that this is a problem beyond individual defendants who seek to put these ideas into action. Our society is not afraid of ideas, we're committed to the belief that we have better ideas, ideas that allow all people the chance both to participate and

1    realize their full potential and, um, have an equal and
2    just and respectful place in society, and the one thing
3    -- and I'm sure I did not do this well yesterday, but I
4    did try to address what you raised, that outside the law
5    enforcement, which has been superb here in this case,
6    superb at the level of enforcement of the law and superb
7    in the prosecution of crimes that justly can be indicted
8    and proved, we need something, something that's
9    internet-attractive to young people to convey those
10   ideas and to convey the self-sacrifice, the heroism, the
11   daily requirement of what it means to be a citizen in a
12   republic.  In your several roles, the prosecutor and
13   defense counsel, that's not your direct responsibility,
14   but it is all of our responsibility as Americans to see
15   that the truly magnificent system that we have, a system
16   that is borne out in this proceeding in so many ways,
17   um, resonates in the hearts and minds of -- I called
18   them "restless young people" yesterday, and I'll stand
19   on that.
20        He should have credit toward the service of this
21   sentence from the 11th of June of 2015 toward the
22   present, and I do declare such credit.
23        Mr. Rovinski, despite your plea agreement, you
24   have the right to appeal from any findings or rulings
25   the Court makes against you.  Should you appeal and

1   should your appeal be successful, in whole or in part
2   and the case remanded, you'll be resentenced before
3   another judge.  Mr. Fick, if an appeal is decided upon,
4   you want transcript, seek it from this session of the
5   court because I'll turn it around right away.  Do you
6   understand?
7           MR. FICK:  Yes, your Honor.
8           THE COURT:  That's the sentence of the Court.
9   He's remanded to the custody of the marshals.  We'll
10  recess.
11          (Ends, 10:30 a.m.)
12
13              C E R T I F I C A T E
14
15      I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
16  do hereby certify that the foregoing record is a true
17  and accurate transcription of my stenographic notes,
18  before Judge William G. Young, on Wednesday, December
19  20, 2017, to the best of my skill and ability.
20
21
    /s/ Richard H. Romanow  1-9-18
22  _____
    RICHARD H. ROMANOW    Date
23
24
25