UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS ROVINSKI | No. 15-cr-10153-WGY |

**MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE**

    Defendant, Nicholas Rovinski, respectfully requests that his conditions of supervised release be modified to replace home confinement with a 9 p.m. to 5 a.m. curfew (verified by location monitoring) and that Probation be afforded discretion to grant exceptions to the curfew for appropriate pre-approved purposes such as family gatherings, employment, or education-related activities. Mr. Rovinski has been fully compliant with his release conditions to date and has been on strict home confinement, in his mother's home, for two years. He plans to attend school and continue seeking employment, while maintaining therapeutic support services.

    Both Probation and the government would agree to the switch to a curfew only if accompanied by the imposition of a new and highly invasive condition permitting Probation to seize and search any of Mr. Rovinski's electronic devices and/or perform ongoing monitoring of such devices. Mr. Rovinski objects to the condition, as discussed below, and maintains that the electronic device seizure, search, and monitoring provisions are unnecessary and unwarranted, given his history of compliance.

    As grounds for this motion, undersigned counsel state:

1

1.      On August 11, 2020, this Court granted Mr. Rovinski's motion for compassionate release under 18 U.S.C. § 3582. He remains subject to a life term of supervised release.

2.      The Court ordered that ten years of supervised release be served on home confinement but stated, "[a]fter successfully completing six months of strict home confinement, he may petition the Court for a modification of this condition." D.E. 470.

3.      Mr. Rovinski is subject to courtesy supervision by U.S. Probation in Rhode Island, where he resides with his mother, but this Court and U.S. Probation for this district retain jurisdiction over the case.

4.      Shortly after Mr. Rovinski successfully completed six months of home confinement, undersigned counsel reached out to D. Mass. U.S. Probation and to the government in order to ascertain what, if any, modified conditions might be acceptable to each.

5.      On March 29, 2021, U.S. Probation advised undersigned counsel:

> U.S. Probation for the District of Rhode Island advises that Mr. Rovinski has been compliant with his term of supervised release and his LM requirements. At this time, the Probation Office would recommend transitioning Mr. Rovinski's LM requirement in stages. We would recommend that he remain on location monitoring, but that he be placed on a curfew to be confined to his residence from 9 pm to 5 am.

6. After apparent consultations between the U.S. Attorney's Office for this district and the Department of Justice in Washington, D.C., the government advised that it would not assent to the modification suggested by Probation.

7. Over the ensuing weeks and months, undersigned counsel engaged in extended efforts to determine whether some other formulation of "step-down" conditions might be acceptable to the U.S. Attorney and the Department of Justice. In or around June 2021, the government apparently advised U.S. Probation that it would oppose any modification of the home confinement condition. In light of the government's opposition, Probation then stated that it would take no position on a motion to modify at that time.

8. In 2022, undersigned counsel again attempted to discern a mutually acceptable process for re-integrating Mr. Rovinski back into society. Probation now states that it would agree to the switch to a curfew (verified by location monitoring) so long as accompanied by the following electronic device seizure, search, and monitoring condition:

> The defendant must submit to unannounced examination of his/her computer or other electronic equipment by the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, which may include retrieval and copying of all data from the computer to ensure compliance with this condition. In addition, the defendant must consent to the removal of such equipment for the purpose of conducting a more thorough investigation and must allow, at the discretion of the probation officer, installation on the defendant's computer any hardware or software system to monitor his/her computer use.

9. The government supports the Probation Department's proposal.

10. Mr. Rovinski submits that the electronic device seizure, search, and monitoring condition, as proposed by Probation, is more onerous than necessary. *See* 18 U.S.C. § 3583(d)(2) (special conditions must cause "no greater deprivation of liberty than is reasonably necessary"). The condition leaves him with no semblance of digital privacy. *See Riley v. California*, 573 U.S. 373, 403 (2014) ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life'"); *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018) (digital surveillance is "tireless and absolute"). Moreover, the condition as written permits not only the suspicionless, "unannounced examination" of his devices (including his cell phone), but the suspicionless "removal" of his devices at any time. Mr. Rovinski therefore objects to the proposed condition, although he will accept whatever conditions the Court may deem necessary in connection with loosening the home confinement restrictions.

11. The Court should grant the motion because continuing home confinement is neither necessary nor appropriate.

12. First, Mr. Rovinski has been scrupulously compliant with all conditions, including the home confinement condition, for two years.

13. Second, it is unrealistic and counterproductive to keep Mr. Rovinski in home confinement indefinitely. In order to build a constructive life going forward, Mr.

Rovinski should be afforded the opportunity to pursue education, work, and social interaction outside the four walls of his mother's home.

14. Third, Mr. Rovinski has been accepted into an educational program. *See* Sealed Ex. A. In addition to attending classes, he would like to be able to work part-time. He has applied for numerous positions and, although none has come to fruition so far, he would like the opportunity to work and become financially independent. *See* Sealed Ex. B (detailing efforts to obtain employment). Mr. Rovinski is receiving ongoing therapy and supportive services. *See* Sealed Ex. C. His post-release trajectory is positive, he has support in the community, and he is ready to move forward.

15. Fourth, ongoing Probation supervision and restrictions are more than sufficient to assure public safety. While this case carries a fraught "terrorism" label, as the Court is well aware from trial testimony and previous submissions, Mr. Rovinski's personal characteristics, role in the offense, and conduct post-arrest all strongly demonstrate that he poses no threat to public safety going forward.

16. The FBI case agents have stayed in contact with Mr. Rovinski following their extended interaction during the co-defendant's trial. After the agents visited Mr. Rovinski at his home on September 11, 2020, they reported:

> Nicholas was the only person home and cordially greeted us at the front door. He invited us to the back patio where we sat at a table and had a short discussion. Due to the current Coronavirus Pandemic, all three of us wore masks during the visit.
>
> Nicholas was appreciative that he was released from FCI

Danbury and granted home confinement. Nicholas talked about being incarcerated and some of his experiences while at FCI Danbury. He expressed interest in establishing a career in either the culinary field or cell phone signal analysis once he is permitted to leave the residence to obtain a job. He is researching courses and other online education options in preparation, such as "OSHA 10" for culinary certification, which is one of his passions. Nicholas discussed his much improved relationship with his father (and newly married step mother), who is also assisting him to find educational and work options. He is looking forward to getting on with his life and putting this chapter behind him. He wants to be a productive member of society. He described his time in prison by stating that he never wants to be in a place like that ever again. Nicholas also told us that he felt that his cognitive skills were slipping due to his incarceration. Nicholas expressed sincere regret to Kate and I for his actions and has asked for forgiveness. He has established connections with family members since being released. His brother has since moved out the house and has had a baby. His father and stepmother have also visited him at the house. There are a few extended family members (aunt and uncle) who have not been in contact due to his actions, but he stated that there is nothing he can do about it and that what others do is out of his control.

. . . .

Nicholas was personable and friendly throughout our meeting. We gave him our business cards and told him to feel free to reach out to us at any time.

For the foregoing reasons, the Court should grant this motion.

    Respectfully submitted,

    NICHOLAS ROVINSKI
    By his attorneys,

    */s/ Amy Barsky*
    William W. Fick, BBO# 650562
    Amy Barsky, BBO# 601111
    FICK & MARX LLP
    24 Federal Street, 4th Floor
    Boston, MA  02210
    857-321-8360
    *abarsky@fickmarx.com*
    *wfick@fickmarx.com*

## **Certificate of Service**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) on August 11, 2022.

                                                 */s/ Amy Barsky*